Abraham N. Heller, J.
This is an application brought by petitioner on behalf of all the citizens of the States of New York and New Jersey for a judgment ordering and directing the Port of New York Authority: “ to select and recommend ” to the Legislatures of the two States a “ suitable and available site for a fourth major airport”; to confine its choice to the Port of New York District, unless it receives statutory authorization to transcend such limits; to request the assistance of the Federal Aviation Administration (FAA) in studying all possible sites; and to establish and operate a fourth major airport at the site selected and recommended.
The Port Authority has moved to dismiss this proceeding in the nature of mandamus,.for legal insufficiency, urging that the *208 Port Authority is not under any legal duty to perform the acts demanded in the amended petition. It also maintains that the relief requested relates solely to matters of legislative policy or administrative discretion with which, in the absence of illegality, fraud or corruption, the courts may not interfere.
There can be no doubt in anyone’s mind as to the necessity for action being promptly taken toward the selection of a new jetport for the New York metropolitan area, which will take many years to build after the site is acquired. The Port Authority recognized the need as far back as 1957, having been engaged almost continuously since that date in studies of the need for and possible locations of a new major airport. But its studies thus far have not produced any practical, concrete result, its original conclusion that the New Jersey Morris County site was the best site being nullified by action of the New Jersey Legislature and its present conclusion that the best other site is the region surrounding Solberg Airport in New Jersey also being hampered by political and social considerations.
The amended petition sets forth in detail the various acts of petitioner since 1966 in his endeavors to interest the Governor of the State of New York and the Port Authority in a Long Island Sound jetport and bridge tunnel crossing; then his communications to and responses from various city and State officials and members of .the Congress and Senate of the United States; the rejection of his plan; and his present amendment for a study of all possible sites under court direction. While the court is in complete sympathy with the goal sought of obtaining definite action leading to the selection of a site, the question of judicial power to order and direct the matters requested must first be answered in passing on the Port Authority’s motion to dismiss.
The question here is whether the Port Authority failed to perform a duty enjoined upon it by law (CPLR 7803). The 1921 Compact creating it provided that it “ shall from "time to time make plans for the development of [the] district ”, “ shall make an annual report to the legislature of both states ”, and “ may from time to time make recommendations to the legislatures of the two states * * * based upon study and analysis ”. (Compact, arts. XI, VII, XII, see L. 1921, ch. 154, emphasis added). The making of recommendations is, therefore, permissive rather than mandatory. It has made reports to the Legislatures from time to time regarding this subject of airport requirements and sites for a new jetport, pointing out that its duties under the Port Compact are ‘ ‘ simply to *209 study and report * * * But the only authority in the world that can authorize the construction of a new terminal airport anywhere in this metropolitan area is the authority of the people through their elected representatives in Trenton and in Albany ’ \
There is no express provision of law mandating any duty upon the Port Authority with respect to an airport. The Port Authority urges that the legislative intent, that there be additional statutory authority before the Port Authority takes steps toward the construction of an airport, is shown by the following provision inserted in the 1962 Hudson Tubes-World Trade Center legislation: “ Nothing contained in this act shall authorize or empower the port authority to establish, construct or otherwise effectuate an air terminal ”. (L. 1962, ch. 209, § 3.)
Since the Port Authority is continuing its study of the problem and has made recommendations from time to time, it has performed the general duties enjoined upon it by the Compact.
The function of a mandamus order is limited solely to compelling the performance by public officials of acts clearly imposed by law. While the matter of studies in the planning of the development of the district and reports to the Legislatures would be embraced in the duties imposed by law, the additional step of selecting and recommending a site to the Legislatures is a matter within the discretion of the Port Authority until the Legislatures enact a law providing some specific direction with regard to a new airport. The function which petitioner is requesting this court to perform is properly that of the Legislatures, to enact a law directing the Port Authority to proceed without delay with the selection of a site and the plans for the construction of a new jetport.
The motion to dismiss this proceeding must accordingly be granted.